**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MARI S.,**

                              **Plaintiff,**

vs.                                                   **6:18-cv-538
(MAD)**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**OFFICE OF PETER W. ANTONOWICZ**    **PETER W. ANTONOWICZ, ESQ.**
148 W. Dominick St.
Rome, New York 13440
Attorneys for Plaintiff

**OFFICE OF THE UNITED**             **SIXTINA FERNANDEZ, ESQ.**
**STATES ATTORNEY**
26 Federal Plaza, Room 3904
New York, New York 10278-0004
Attorneys for the Commissioner

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff filed a Title II application for a period of disability and disability insurance benefits on July 1, 2015. She filed a Title XVI application for supplemental security income on September 11, 2015. In both applications, Plaintiff alleged that her disability began March 1, 2015, and all claims were denied initially on September 21, 2015. Plaintiff appeals on the limited issues of (1) whether Defendant erred in not including systemic lupus erythematosus ("lupus") among Plaintiff's severe impairments, and as a result (2) whether Defendant erred in weighing the medical evidence, and (3) whether Defendant erred in assessing Plaintiff's residual functional

capacity.

## II. BACKGROUND

**A.    Plaintiff's Medical History**

Plaintiff has been diagnosed with autoimmune hepatitis, cirrhosis, obesity, hypertension, and anaemia. Dkt. No. 10 at 3. She testified that her symptoms started in 2008 and 2009, and that her medical tests came back with a diagnosis of lupus, in addition to her other diagnoses. R. at 205.[1] Plaintiff testified to feeling fatigued, having trouble concentrating, and having trouble sitting for long periods of time. *Id*. at 203. For instance, she would have trouble performing secretarial tasks because she felt, "[j]ust like a foggy feeling and confusion." *Id*. at 204. Plaintiff further testified that such symptoms have "gotten worse" in that on some days she will have "aches and pains, and you know, several other symptoms," which she described as "hard to explain." *Id*. at 206. She attributed these symptoms to her lupus. *Id.*

In a report produced from an August 2015 consultative examination, Dr. George Wootan, M.D., diagnosed Plaintiff with lupus, cirrhosis of the liver secondary to autoimmune hepatitis, esophageal varices, and chronic pruritus. *See id.* at 412. Based on his physical examination of Plaintiff, Dr. Wootan concluded that Plaintiff would not have "restrictions with respect to speaking, seeing hearing, handling objects, or reaching. *Id*. at. Dr. Wootan further concluded that Plaintiff "would have mild restriction with kneeling, carrying, lifting, bending, climbing stairs, walking, standing, and sitting." *Id*.

Her psychiatric consultative evaluator, Jacqueline Santoro, Ph.D., found that Plaintiff had "mild limitations" in "maintaining a regular schedule," "performing complex tasks," and "dealing

---

[1] The Court will cite to the administrative record as "R." to page numbers as assigned by the CM/ECF system.

with stress," attributable to "psychiatric symptoms." *Id.* at 419. Dr. Santoro concluded, however, that these results were "consistent with psychiatric problems, but in and of themselves are not enough to interfere with her ability to function on a daily basis." *Id.* Dr. Santoro determined that Plaintiff had a fair prognosis "given her history of health concerns." *Id.*

In a letter dated March 31, 2016, Plaintiff's treating physician, Dr. Amy L. Grace, opined that Plaintiff "should not be working due to multiple medical conditions," without providing any further explanation. *Id.* at 459. In response to a request for medical opinion, on October 5, 2016, Dr. Grace determined that Plaintiff could not work due to her limitations. *See id.* at 466. Specifically, she advised that Plaintiff "experiences fatigue, abdominal pain, and generalized malaise. Due to these significant symptoms I feel she is not capable of gainful employment." *Id.* This assessment was based the diagnoses of autoimmune hepatitis, cirrhosis, and portal hypertension. *See id.*

Plaintiff first began treatment with Dr. Grace on June 25, 2015. *See id.* at 442. During this initial visit, Dr. Grace listed the following diagnoses: autoimmune hepatitis, irregular menstrual cycle, ovarian cyst, external hemorrhoids, rash and nonspecific skin eruption, cirrhosis, and anemia. *See id.* at 442.. Plaintiff was treated by Dr. Grace on at least seven occasions between June 25, 2015 and September 30, 2016. *See id.* at 442-65. Throughout this time, Dr. Grace never mentions a diagnosis of lupus. The Court can find "diagnoses" of lupus in the record only indirectly, such as in a psychiatric evaluation, in the application paperwork, and Plaintiff's own testimony. *See id.* at 416-19.

Plaintiff stopped working on March 1, 2015. *Id.* at 338. She stopped working because her position was eliminated, but she believed her condition was severe enough to cease work as of September 9, 2014.

3

# III. DISCUSSION

A. **Standard of Review**

   *1. Five Step Analysis*

   An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to Step Three.

   At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

   The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *See id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot,

4

the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *See id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)

5

(citation omitted).

### *2. Credibility Determination*

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. . . . The ALJ must consider "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] makes to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings."

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including the following: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether the plaintiff's statements about the

6

intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. July 2, 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891, *10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

> [i]t is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

7

SSR 96-7p, 1996 WL 374186, at *2.

**B.     The ALJ's Decision**

At Step One, the ALJ found that Plaintiff was not working and was not engaging in any substantial gainful activity, and has not done so since March 1, 2015. R. at 19. This is not contested. At Step Two, the ALJ found that Plaintiff had severe impairments, particularly, hypertension, cirrhosis of the liver, autoimmune hepatitis and obesity. *Id.* These impairments have limited Plaintiff's ability to perform basic work activities, and were therefore found to be severe. *Id.* This is also not contested. The ALJ found that Plaintiff's medically determinable depression does not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and is therefore non-severe. *Id.* at 20. In support of this conclusion, the ALJ found that Plaintiff remained able to live alone, take care of her own personal needs and activities of daily living, drive, shop in stores and on the computer, and enjoys spending time with family and friends. *Id.* In fact, Plaintiff detailed her own activities in her testimony and questionnaires: she is able to cook on a near-daily basis, clean her house (dusting, sweeping, "keeping things tidy"), she can drive, shop in stores for groceries and clothes, pay her bills and manage her own money, and read on a daily basis. *Id.* at 331.

The ALJ noted that consultative examiner, Jacqueline Santoro, Ph.D., found that Plaintiff had "mild" limitation maintaining a regular schedule, performing "complex" tasks, and dealing with stress. *Id.* at 19. However, Dr. Santoro also opined that Plaintiff had no limitation making appropriate decisions and relating adequately with others. Additionally, treatment notes report that in September 2016, Plaintiff no longer suffered from depression. *Id.*

At Step Three, the ALJ found that, based upon these impairments, Plaintiff's impairments

did not meet the severity of an impairment in the Listings.[2] *Id.* at 21. The ALJ found that Plaintiff has the residual functional capacity to perform sedentary work, except that she can never climb ladders, ropes, or scaffolds; she can occasionally be exposed to moving mechanical parts; occasionally operate a motor vehicle; and occasionally be exposed to unprotected heights. *Id.* The ALJ considered all symptoms evidenced by the objective medical evidence and other evidence. *Id.* The ALJ evaluated the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations." *Id*.

The ALJ considered Plaintiff's "fatigue," "diffuse joint pain," "trouble maintaining concentration and problems with her memory," "difficulty sitting and standing for long periods," and that she "cannot lift heavy weight." *Id.* Despite these limitations, the ALJ also noted her ability to drive, to take care of her personal needs, and to perform activities of daily living. *Id.* The ALJ concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* at 22. The ALJ noted routine and conservative treatment with Plaintiff's primary care physician, Dr. Amy L. Grace at Bassett Medical Center. *Id*. During a consultative examination, Dr. George Wootan observed that Plaintiff demonstrated a limited range of motion, but was otherwise neurologically intact with stable and non-tender joints. *Id.* at 22.

---

[2] If a person's impairment meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, then that person is disabled regardless of their age, education, and work experience. 20 C.F.R. § 404.1520(d). If the impairment is not equivalent to those listed in Appendix 1, the SSA makes a finding about that person's "residual functional capacity" based on the case record to determine if that person can do their past relevant work or if they can "adjust to other work." 20 C.F.R. § 404.1520(e).

The ALJ accorded "little weight" to Dr. Grace's opinions that Plaintiff should not be working due to multiple medical conditions because this opinion was not supported by substantial evidence. *Id*. at 23. The ALJ noted that Dr. Grace's opinions were entirely conclusory and provided no quantifiable functional limitations as related to Plaintiff's impairments. *See id.*

Based on the entire record, the ALJ found that because Plaintiff retained the ability to perform daily life activities, take care of herself, and live by herself, that her residual functional capacity is such that she can continue to perform many basic activities associated with work. *Id.* Accordingly, the ALJ concluded at Step Four that Plaintiff would be able to return to past relevant work as a secretary. *Id.*

**B.      Analysis**

   *1. Lupus*

Initially, Plaintiff argues that the ALJ erred in failing to find lupus a severe impairment. *See* Dkt. No. 10 at 8-10. Specifically, Plaintiff claims that lupus qualifies as a severe impairment under the regulations and that the ALJ's failure to discuss this impairment prevented the proper evaluation of Plaintiff's claim. *See id.* In response, the Commissioner contends that, although it was her burden to prove, Plaintiff failed to demonstrate that she had lupus and that it caused significant functional limitations in her ability to perform work-related activities. *See* Dkt. No. 11 at 6-8. Further, the Commissioner notes that even if the Commissioner erred in not finding Plaintiff's alleged diagnosis of lupus to be a severe impairment at Step Two, remand is unwarranted because the ALJ continued through the sequential evaluation to consider Plaintiff's limitations and reached an RFC determination. *See id.* at 8 (citing *O'Connell v. Colvin*, 558 Fed. Appx. 63, 64 (2d Cir. 2014)) (other citations omitted).

As the Court alluded to above, there is insufficient evidence in the record from which the

Court can conclude that Plaintiff has lupus. No original diagnosis or lab work has been provided which corroborates the diagnosis of lupus alleged to have been made in 2008/2009, nor is there any evidence from a physician directly tying Plaintiff's impairments to such a diagnosis. Rather, the only times lupus is mentioned in the record before the Court is when Plaintiff has self reported that she suffers from the condition.

For example, in the Disability Report Plaintiff submitted as part of her benefits application, she lists lupus as one of the medical conditions she suffers from that limits her ability to work. *See* R. at 338. However, in that same submission, when discussing what she was treated for by her primary care physician from 2009 through 2013, Plaintiff indicates that she was treated for "autoimmune hepatitis, cirrhosis, ascites, esop[h]ageal varices," but no mention is made of treatment for lupus. *See id.* at 345. Further, in the letter brief submitted by her attorney prior to the October 12, 2016 hearing, her attorney discusses all but one of her medical conditions, lupus. *See id.* at 385-86. In treatment notes dated July 3, 2014, by Dr. Fatema T. Islam, M.D., from the Bassett Medical Center, under the section titled "Patient Active Problem List," again no mention is made of lupus. *See id.* at 391. In fact, Plaintiff failed to cite to, and the Court was unable to locate, a single mention of a lupus diagnosis in any of the treatment notes from Plaintiff's treating physicians. *See id.* at 390-403, 421-66. Rather, the only time the word lupus appears in the record is in Plaintiff's SSI and DIB applications that she filled out, and in the consultative examination reports from Drs. Wootan and Santoro. *See id.* at 338, 346, 409, 416, 419. Although Plaintiff may have been diagnosed with lupus at some point in the past, there is no evidence of this diagnosis in the record. Rather, the record makes clear that Plaintiff was not being treated for this alleged ailment at any point from 2012 through 2016.

As such, the Court concludes that the substantial evidence does not support a finding that

11

Plaintiff has lupus or that lupus is one of Plaintiff's severe impairments. Even if it was error for the ALJ to omit lupus as a severe impairment at Step Two, the error was harmless. In making the RFC determination, the ALJ considered Plaintiff's alleged symptoms of fatigue, difficulty concentrating, joint pain, weakness cramping and vascular problems, which are symptoms commonly associated with lupus. *See* R. at 21-22. Because the ALJ proceeded with the remaining steps of the analysis based on Plaintiff's other severe impairments, any error in failing to attribute the symptoms to lupus was harmless. *See Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).

Based on the foregoing, the Court finds that the ALJ did not err in failing to find that Plaintiff suffers from lupus or that it was a severe impairment.

### *2. Weight of Medical Evidence*

Plaintiff claims that "[t]he ALJ could not properly evaluate the opinion evidence without properly determining the severity of the plaintiff's Systemic Lupus Erythematosus. The opinion evidence is based, in part, upon the physician's consideration of the effects of this impairment." Dkt. No. 10 at 11. In response, the Commissioner contends that "[b]ecause Dr. Grace did not diagnose lupus nor were her statements that Plaintiff was unable to work based on a lupus diagnosis," Plaintiff's arguments are unavailing. *See* Dkt. No. 11 at 9.

The treating physician rule states that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). When an ALJ refuses to assign a treating physician's opinion controlling weight, a number of factors must be considered to determine the appropriate weight to assign,

including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the SSA's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c). After accounting for these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Burgess*, 537 F.3d at 129 (internal quotation marks and citation omitted). "Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* at 129-30 (internal quotation marks and citation omitted).

Plaintiff argues that Dr. Grace's opinion that Plaintiff is unable to work should be given controlling weight over all other medical evidence available in this case. *See* Dkt. No. 10 at 10. However, "the opinion of a treating source will not be afforded controlling weight if that opinion is not consistent with other substantial evidence in the record, including the opinions of other medical experts." *Verret v. Colvin*, No. 3:14CV00234, 2015 WL 13729870, *7 (D. Conn. June 2, 2015) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). The Court finds that the ALJ appropriately weighed the medical evidence. Where the opinion of Dr. Grace provided only the conclusory opinion that Plaintiff should not work without ascertainable support, the ALJ looked to other evidence, including the reports of consultative examiners, to determine the extent of Plaintiff's impairments. Where the opinion of the consultative examiners gave more thorough information about Plaintiff's condition, the ALJ properly exercised discretion in affording these opinion more weight.

The ALJ's reasons are evident on the face of the decision. Dr. Grace's care of Plaintiff was routine and conservative. She provided no reasons along with her conclusory medical

13

opinion that "due to multiple medical conditions" Plaintiff "should not be working." R. at 459. This opinion, as discussed above and in the ALJ's decision, is inconsistent with the medical evidence available, and was not provided by a specialist. These constitute sufficient "good reasons" to have given little weight to Dr. Grace's opinion.

### *3. Residual Functional Capacity*

Plaintiff contests the ALJ's findings regarding residual functional capacity only on the grounds that the ALJ's failure to address lupus resulted in an incomplete evaluation of the evidence. As the Court has stated, the ALJ properly declined to find that lupus was a severe impairment, since nothing in the record supports such a conclusion.. Therefore, there is no basis to upset the ALJ's determination. Furthermore, the Second Circuit has held that where the symptoms of a plaintiff's severe impairments are considered despite not finding a severe impairment at step two, the error is harmless. *See O'Connell v. Colvin*, 558 Fed. Appx. 63, 65 (2d Cir. 2014). Here, the ALJ considered all of the symptoms that Plaintiff exhibited, including those that Plaintiff attributes to lupus, in coming to the conclusion that Plaintiff's residual functional capacity is such that she may continue to work despite her limitations. Therefore, any error in failing to make a determination that Plaintiff's alleged lupus was severe was rendered harmless by the ALJ's consideration of all the alleged symptoms and limitations later in the analysis.

Plaintiff does not assert any other error, but the Court will briefly address the ALJ's broader determination. The ALJ considered the testimony of a vocational expert who testified that Plaintiff's past work was as a secretary, and that an individual with Plaintiff's background who would only be able to perform sedentary work would be able to perform Plaintiff's past work. The expert testified that a person who was required to take frequent naps, or who was limited to simple, routine and repetitive tasks would not be able to perform her past work. R. at

14

212.  The substantial evidence shows that Plaintiff is able to perform more than simple routine and repetitive tasks.  *Id.* at 331.  She is able to adequately perform her activities of daily living, prepare her personal budget, read, and perform other sedentary activities.  *Id*.  The Court finds no reason to depart from the ALJ's determination which is supported by substantial evidence.

Accordingly, the Court finds that the ALJ's determinations were based on the correct application of the law and are supported by substantial evidence.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that the Commissioner's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the Commissioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 3, 2019
      Albany, New York

*Mae A. D'Agostino*
U.S. District Judge